UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| REGINA D. ARNETT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, *sued as Andrew M. Saul,* )<br>*Commissioner of Social Security*, )<br>)<br>Defendant. ) | CAUSE NO. 4:20-cv-00046-SLC |

**OPINION AND ORDER**

Plaintiff Regina D. Arnett appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, Arnett's arguments are persuasive, and thus, the Commissioner's decision will be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

**I. FACTUAL AND PROCEDURAL HISTORY**

Arnett applied for DIB in January 2017 and SSI in April 2017, alleging disability as of January 6, 2017. (ECF 15 Administrative Record ("AR") 10, 89-90, 205, 212, 214, 340). Arnett was last insured for DIB on September 30, 2018. (AR 264). Thus, for purposes of her DIB claim, she must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB).

Arnett's claim was denied initially and upon reconsideration. (AR 10, 119-26, 131-44).

On February 11, 2019, administrative law judge ("ALJ") Marc Jones conducted an administrative hearing at which Arnett, who was represented by counsel, and a vocational expert testified. (AR 35-64). On August 31, 2018, the ALJ rendered an unfavorable decision to Arnett, concluding that she was not disabled because she could perform a significant number of unskilled, sedentary jobs in the national economy despite the limitations caused by her impairments. (AR 10-21). The Appeals Council denied Arnett's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Arnett filed a complaint with this Court on June 12, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Arnett alleges that a remand is necessary because the ALJ did not give good reasons for rejecting the opinions of Dr. Wayel Kaakaji, her treating neurosurgeon, and Dr. Mario Brkaric, her treating orthopedic surgeon, that she could sit a total of just two hours in an eight-hour workday. (ECF 17 at 8-14).

At the time of the ALJ's decision, Arnett was forty-three years old (AR 205); had obtained her general equivalency degree (AR 257); and had worked at various temporary jobs (*id.*), none of which qualified as past relevant work (AR 19). In her applications, Arnett alleged disability due to lupus, asthma, vertigo, hypertension, high cholesterol, diabetes, cervical pain, carpal tunnel syndrome, lumbar back pain with radiculopathy, bilateral foot pain, and "film on eyes." (AR 256, 294, 340).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from

3

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she can perform her past relevant work; and (5) whether she is incapable of performing any work in the national economy.[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On April 3, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 10-21). At step one, the ALJ concluded that Arnett had not engaged in substantial gainful activity after her alleged onset date of January 6, 2017. (AR 13). At step two, the ALJ found that Arnett had the following severe impairments: asthma, carpal tunnel syndrome of the bilateral wrists, diabetes, obesity, and spine disorder. (*Id.*). At step three, the

---

[1] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

ALJ concluded that Arnett did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 15).

Before proceeding to step four, the ALJ determined that Arnett's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 16). The ALJ assigned Arnett the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.96(a) except that she can frequently handle and finger with both hands. She can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch; and she can occasionally work in dust, odors, fumes, and pulmonary irritants. She can never climb ladders, ropes, or scaffolds, never crawl, never work at unprotected heights, never around dangerous machinery and moving mechanical parts, and never in extreme cold, extreme heat, or humidity and wetness. Every 30 minutes, she must be allowed to shift positions or alternate between sitting and standing while remaining on task.

(AR 15).

Arnett had no past relevant work to consider at step four. (AR 19). At step five, the ALJ concluded that Arnett could perform a significant number of unskilled, sedentary jobs in the national economy, including charge account clerk, document clerk, and food order clerk. (AR 20). Therefore, Arnett's applications for DIB and SSI were denied. (*Id.*).

### C. Dr. Kaakaji's Opinion

On February 1, 2018, Dr. Kaakaji, Arnett's treating neurosurgeon, completed a medical source statement indicating that he had treated Arnett two years for a diagnosis of lumbar spondylolisthesis. (AR 990). He opined that in an eight-hour workday, Arnett could stand for thirty minutes at a time and one hour total, sit for one hour at a time and two hours total, lift five pounds frequently, and rarely bend or stoop. (*Id.*). He indicated that she suffered from severe pain, estimating that it would cause her to be off task twenty-five percent of the time and to miss

5

more than four days of work per month. (AR 991). He cited the following examination findings in support of these limitations: neuro-anatomic distribution of pain, limitation of spinal motion, sensory or reflex loss, positive straight leg raising test, needs to change position more than once every two hours, lumbar spinal stenosis, nerve damage, and inability to ambulate effectively. (AR 990).

> In considering Dr. Kaakaji's opinion, the ALJ stated:
>
> Some weight is given to the treating source statement of Wayel Kaakaji, M.D. The claimant was given significant exertional limitations, including limited time spent sitting at one time. At least some of the limitations are consistent with the record, including the claimant's ongoing symptoms due to spine disorder and diabetes. However, the extensive limitations in total time spent sitting and standing are given little weight consider[ing] the source indicated there would be a check up in 6 months.

(AR 18-19 (internal citation omitted)). Arnett argues that the ALJ materially erred by rejecting Dr. Kaakaji's treating source opinion that she could sit for just two hours total in an eight-hour workday. (ECF 17 at 9-11).

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances."[2] *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, this principle is not absolute, as "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870 (citations omitted); *see also*

---

[2] Because this claim was filed prior to March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 apply rather than 20 C.F.R. §§ 404.1520c and 416.920c.

6

*Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner applies the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see Books*, 91 F.3d at 979. The Commissioner must always give "good reasons" for the weight applied to the treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Clifford*, 227 F.3d at 870.

Arnett argues that the ALJ erred by affording "little weight" to Dr. Kaakaji's opinion that she could sit for just two hours total in an eight-hour workday. (*See* AR 17). She contends that the ALJ's stated reason for rejecting this portion of Dr. Kaakaji's opinion—that she was to return for a check up in six months—falls woefully short of a "good reason" to reject a treating physician's opinion. (ECF 17 at 9-10). The Court agrees. The ALJ's stated reason, standing alone, is insufficient to apply little weight to a treating physician's opinion, particularly here, where Dr. Kaakaji is a specialist who had treated Arnett for two years. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); *see also Criner v. Barnhart*, 208 F. Supp. 2d 937, 952-53 (N.D. Ill. 2002)

7

(finding that the ALJ erred by failing to assign more weight to the opinion of the claimant's specialist who had treated her for a period of years (citations omitted)).

The Commissioner responds that Dr. Kaakaji's opinion was not entirely consistent with or supported by other evidence of record, and thus, the opinion was not entitled to controlling or significant weight. (ECF 20 at 7). Specifically, the Commissioner points to the ALJ's observation earlier in his decision that other evaluations revealed only intermittent loss of sensation, an inconsistency about which leg was more affected, and often normal gait and full strength. (ECF 20 at 7 (citing AR 17, 394, 543, 560-61, 706, 708-16, 932, 992-94, 1005, 1054, 1086, 1094, 1174-75)).

Of course, "tidy packaging" is not required in ALJs' decisions because the courts read them "as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted)). But the ALJ's observations about Arnett's sensation, gait, and strength are not necessarily inconsistent with Dr. Kaakaji's opinion. The ALJ failed to consider that Dr. Kaakaji's restrictions may have stemmed from Arnett's chronic pain, rather than from a lack of strength, range of motion, or sensation in her lower extremities. *See Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) ("[T]here is no evidence in the record supporting the ALJ's belief that Engstrand's ability to feel the monofilament contradicts his complaints of pain."); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (stating that an ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves").

"Indeed, as several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations

8

. . . ." *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019); *see also id.* at *3 n.4 (collecting cases). "An ALJ's independent reliance on a claimant's muscle strength to depart from a medical opinion regarding such limitations therefore suggests an improper tendency to 'play doctor.'" *Id.* at 3; *see also Charles B. v. Saul*, No. 18 C 1377, 2019 WL 3557055, at *9 (N.D. Ill. Aug. 1, 2019) (finding that the ALJ improperly played doctor when he found that evidence of full strength in the claimant's extremities was inconsistent with a doctor's opinion on the claimant's limitations and severe pain); *Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) ("[I]t appears that the ALJ succumbed to the temptation to 'play doctor' when he independently concluded that normal muscle strength is inconsistent with chronic pain."). Therefore, the ALJ's discussion of the examination results earlier in his decision does not constitute a good reason to apply little weight to Dr. Kaakaji's opinion about Arnett's total sitting and standing limitations.

The Commissioner also emphasizes that Arnett underwent surgery in November 2018 *after* Dr. Kaakaji assigned these limitations, presumably inferring that the surgery rendered the limitations stale. (ECF 20 at 7). In that regard, the ALJ stated in his decision that "there is . . . no indication the surgery has been less than effective." (AR 17). But Dr. Brkaric, Arnett's treating orthopedic surgeon, issued a medical source statement in January 2019—two months *after* Arnett's surgery—also limiting her to sitting a total of two hours and standing a total of one hour in an eight-hour workday. (AR 1080). Thus, there is evidence contradicting the ALJ's inference that Arnett's surgery rendered Dr. Kaakaji's limitations irrelevant. As a result, the ALJ's inference that Arnett's surgery nullified Dr. Kaakaji's opinion was not reasonable. *See generally Stevenson*, 105 F.3d at 1155 (acknowledging that an ALJ is entitled to make

9

reasonable inferences from the evidence before him). Moreover, if the ALJ was uncertain about the applicability of Dr. Kaakaji's opinion in light of Arnett's subsequent surgery, he could have contacted Dr. Kaakaji to request additional clarification. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (stating that an ALJ must recontact medical sources "when the evidence received is inadequate to determine whether the claimant is disabled"); SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996).

And even if Arnett did improve following her surgery in November 2018, that does not preclude her argument that she, at a minimum, may qualify for a closed period of disability from January 6, 2017, her alleged onset date, through her November 2018 surgery—a period of twenty-two months. (ECF 17 at 12-13). *See* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). As such, the ALJ erred by failing to consider whether Arnett at least satisfied a closed period of disability from her alleged onset date through the date she recovered from her November 2018 surgery. *See, e.g.*, *Jackson v. Astrue*, No. 09 C 50028, 2010 WL 4793309, at *14 (N.D. Ill. Nov. 18, 2010) (remanding case where the ALJ failed to make clear in his decision whether he considered the possibility of a closed period of disability around the times that the claimant underwent her knee and back surgeries).

To reiterate, an ALJ must provide "good reasons" for rejecting the medical source statement of a treating physician. *See Campbell*, 627 F.3d at, 306. Here, the ALJ failed to provide good reasons for rejecting Dr. Kaakaji's opinion that Arnett could sit only two hours total and stand one hour total in an eight-hour workday. Therefore, the ALJ's decision will be

10

remanded for reconsideration of the medical source statement of Dr. Kaakaji, Arnett's treating neurosurgeon, contacting Dr. Kaakaji for clarification of his opinion if necessary.

### D.  Dr. Brkaric's Opinion

On January 10, 2019, Dr. Brkaric, Arnett's treating orthopedic surgeon, completed a medical source statement reflecting that he had treated Arnett since September 2018 for a diagnosis of lumbar radiculopathy.  (AR 1080).  He opined that in an eight-hour workday, Arnett could stand for fifteen minutes at a time and one hour total, sit for thirty minutes at a time and two hours total, lift five pounds frequently and ten pounds occasionally, never bend or stoop, and must elevate her legs frequently.  (*Id.*).  He indicated that she suffered from severe pain, estimating that it would cause her to be off task fifty percent of the time and to miss more than four days of work per month.  (AR 1081).  He identified the following examination findings in support of these limitations:  limitation of spinal motion, muscle weakness or atrophy, sensory or reflex loss, arachnoiditis, need to change position more than once every two hours, lumbar spinal stenosis, inability to perform fine and gross movements effectively, and inability to ambulate effectively.  (AR 1080).

In considering Dr. Brkaric's opinion, the ALJ stated:

Some weight is given to the treating source statement of Mario Brkaric, M.D. Significant limitations were given.  The source is the claimant's neurosurgeon[3] and treating notes indicate the observed ongoing stenosis in the claimant's lumbar spine.  However, treating notes after the procedure did not note any significant abnormalities or complications and indicated that the claimant was to follow up with physical therapy.  As noted above, [a] January 2019 evaluation noted no injury or changes to the spine or notable issues with range of motion, strength or sensation.  Therefore, only some weight is given, considering general

---

[3] While the ALJ referred to Dr. Brkaric as Arnett's treating neurosurgeon (AR 19), Dr. Brkaric was her treating orthopedic surgeon and Dr. Kaakaji was her treating neurosurgeon.  (ECF 21 at 2, 6).

>observations of good response to the procedure and lack of physical therapy notes in observing rehabilitation.

(AR 19 (internal citation omitted)).  As with Dr. Kaakaji's opinion, Arnett argues that the ALJ materially erred by rejecting Dr. Brkaric's treating source opinion that she could sit for just two hours total in an eight-hour workday.  (ECF 17 at 9-11).

As concluded *supra* with respect to Dr. Kaakaji's opinion, the ALJ's observations about Arnett's sensation, range of motion, and strength are not necessarily inconsistent with Dr. Brkaric's opinion.  The ALJ failed to consider that Dr. Brkaric's restrictions may have been assigned to avoid exacerbation of Arnett's back pain, rather than from a lack of strength, range of motion, or sensation in her lower extremities.  To reiterate, "[a]n ALJ's independent reliance on a claimant's muscle strength to depart from a medical opinion regarding such limitations therefore suggests an improper tendency to 'play doctor.'"  *Otis S.*, 2019 WL 7669923, at *3; *see also id.* at *3 n.4 (collecting cases); *Charles B.*, 2019 WL 3557055, at *9; *Fansler*, 2008 WL 474205, at *7.  Therefore, that Arnett did not exhibit "notable issues with range of motion, strength or sensation" in January 2019 (AR 19) is not a good reason to reject Dr. Brkaric's opinion about Arnett's total sitting and total standing limitations.

Nor is the ALJ's observation that Arnett did not follow up with physical therapy after surgery a good reason to discount Dr. Brkaric's opinion, as the ALJ did not ask Arnett why she failed to continue her physical therapy after discharge from the hospital following her surgery.  *See Keiper v. Berryhill*, 383 F. Supp. 3d 819, 823 (N.D. Ind. 2019) (stating that an ALJ may not make assumptions about a claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance (collecting cases)).  Furthermore, Arnett *was* participating in physical therapy at the time of the hearing (AR 54), which the ALJ failed to mention in his

12

decision. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citation omitted)).

Significantly, Dr. Brkaric's opinion is the most recent medical source statement of record—indeed, it is the *only* medical source statement penned after Arnett's surgery. The reviewing state agency physicians—to which the ALJ assigned "[s]ome weight" (AR 18)—issued their opinions in July 2017 and February 2018 (AR 71-74, 99-101), and thus, they were unaware of Arnett's surgery and Dr. Kaakaji's and Dr. Brkaric's opinions. *See Angela S.C. v. Saul*, No. 19 CV 50045, 2020 WL 4015334, at *6 (N.D. Ill. July 16, 2020) ("[T]he ALJ erred by relying on outdated medical opinions and failing to submit the new evidence to another medical expert to opine on the extent of these changes and instead making that determination himself."); *Fike v. Astrue*, No. 1:11-CV–00168, 2012 WL 1200670, at *8 (N.D. Ind. Apr. 10, 2012) (remanding case where the ALJ relied on the opinion of the state agency physicians who had neither examined the claimant nor reviewed the permanent restrictions assigned by the claimant's treating physician); *Ulloa v. Barnhart*, 419 F. Supp. 2d 1027, 1036 (N.D. Ill. 2006) (same).

In sum, as with Dr. Kaakaji's opinion, the ALJ failed to provide "good reasons" for rejecting Dr. Brkaric's treating source opinion that Arnett could sit for only two hours total and stand one hour total in an eight-hour workday. *See Campbell*, 627 F.3d at, 306. Therefore, the ALJ's decision will also be remanded for reconsideration of the medical source statement of Dr. Brkaric, Arnett's treating orthopedic surgeon.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is DIRECTED to enter a judgment in favor of Arnett and against the Commissioner.

SO ORDERED.

Entered this 11th day of June 2021.

                                            /s/ Susan Collins
                                            Susan Collins
                                            United States Magistrate Judge